UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-30795
_____


PERRY LEE FORD,

Plaintiff-Appellant,

versus

JOHN SCALLEN, Deputy of the St. Tammany Parish Sheriff's Offices;
UNIDENTIFIED PARTIES;
PATRICK J. CANULETTE, Sheriff, of St. Tammany Parish Sheriff's
Office;
ST. TAMMANY PARISH SHERIFF'S OFFICE

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-843-T)
_____

September 3, 1997

Before JONES, STEWART, and DENNIS, Circuit Judges[*]

JONES, EDITH H, Circuit Judge:

Plaintiff-Appellant Perry Lee Ford ("Ford") appeals the district court decision partially granting Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted, and the decision of a subsequent district

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court on transfer granting the Defendants' motion for summary judgment.  Finding no error, we affirm.

**I.**

**BACKGROUND**

These facts are recited consistently with Ford's allegations.  In the vicinity of two to four weeks before March 12, 1993, Ford was driving his vehicle when he was stopped, allegedly without probable cause, by some deputies from the St. Tammany Parish Sheriff's Office.  The deputies, one of whom was Deputy John Scallen ("Scallen"),[1] found some crack cocaine on the floor of Ford's car.  Rather than arrest Ford, the deputies urged Ford to work for them as an undercover agent.  Ford alleges the deputies knew Ford had previously been arrested, and that this was a conspiracy to extort Ford's cooperation in exchange for dropping a potential drug possession charge.  Ford was subjected to subsequent telephone calls regarding his cooperation, and Scallen threatened over the phone to arrest Ford for possession of the crack cocaine found in his car if he did not arrange to buy drugs.  At one point, Ford alleges, Scallen exposed Ford to danger by discussing his participation as an undercover agent for the Sheriff's Office

---

[1] Scallen's name is spelled both "Scallen" and "Scallan" in the appellate briefs and court record.  This opinion will use "Scallen," as his name is listed in the style of the case on appeal.

within the hearing range of the public in the "high crime area" where Ford was eventually shot, and that an individual who Scallen knew was involved in the local drug business overheard this conversation.

Ford apparently told Scallen that this individual had overheard the discussion of their arrangement, and expressed fear to Scallen that he would be exposed to danger as the result of setting up a drug purchase. Nevertheless, Scallen allegedly dismissed this individual as a "snitch" for the government, and insisted that Ford set up a drug purchase or face arrest, so Ford agreed to arrange a buy. The last face-to-face contact between Deputy Scallen (or anyone from the Sheriff's Office) and Ford occurred several days prior to March 12, 1993.

According to Ford, the agreement with Scallen was that Ford would drive up to a cocaine dealer's residence and purchase cocaine while Scallen hid, witnessed the purchase, and conducted a drug raid. Scallen apparently wanted Ford to purchase the cocaine at a certain apartment complex. Ford testified that he was afraid that Scallen would go ahead and arrest him for possession of the crack cocaine found in his car if Ford notified Scallen that a purchase had been arranged, but failed to procure drugs at the time of the raid. Consequently, on his own initiative and without telling anyone at the Sheriff's Office, Ford decided to make a warm-up purchase outside of the presence of any law enforcement

personnel in order to gain the trust of local drug dealers, thereby ensuring that when he set up a purchase for the Sheriff's Office to witness and raid the other party would have drugs to sell.

In pursuing this plan, Ford made at least two unsuccessful attempts to purchase cocaine. Finally, Ford arranged for a purchase to take place on the night of March 12, 1993 at an apartment complex other than the one mentioned by Scallen. Ford admitted in his deposition that he never informed the Sheriff's Office of this scheme.

When Ford went to the apartment complex on the night of March 12, 1993 to purchase some cocaine, something went wrong and Ford was shot. Ford alleges that the individual who he claims overheard a conversation between Ford and Scallen approached Ford's car after he pulled up to the apartment complex, but before the shooting. The details of the shooting incident which later followed are not clear from the record. Ford is now permanently paralyzed.

## II.

### PROCEDURAL HISTORY

On March 14, 1994, Ford filed suit against Deputy John Scallen, Sheriff Patrick Canulette, and two unnamed deputies (the "Defendants") in federal district court. Ford's suit was brought under 42 U.S.C. §§ 1983, 1985, and 1988, based on alleged

**4**

constitutional deprivations under color of law, including violations of the right to due process, the privileges and immunities clause, the commerce clause, and the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments.

The Defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Following Ford's response and oral argument, District Judge Peter Beer granted the motion in part and denied it in part. The court dismissed all claims except a potential procedural due process ground for a Section 1983 action, based on the allegation that the Defendants confronted Ford with an improper choice of alternatives--work undercover for the defendants or go to jail for drug possession. Ford appealed this ruling to the Fifth Circuit, but his appeal was dismissed for lack of jurisdiction. The case was subsequently reassigned to District Judge G.T. Porteous, Jr. on November 2, 1994.

The Defendants next filed a motion for summary judgment, alleging that Ford's claims that were not based on the March 12th shooting had prescribed under Louisiana's one year prescription period for civil rights actions,[2] or alternatively, that the

---

[2] Louisiana has a general one year prescription period for personal injury actions. *See* LA. CIV. CODE ANN. Art. 3492 (West 1997).

Defendants were entitled to qualified immunity, on all of Ford's claims.

Following Ford's response, on June 28, 1996, the trial court issued its order and judgment granting the Defendants' motion for summary judgment based on the prescription of Ford's remaining due process action, and declined to reconsider the Rule 12(b)(6) dismissal of the other claims. The court found that all of the Defendants' acts occurred more than one year from the filing of Ford's complaint, and therefore, that all of Ford's claims not arising from the shooting itself had prescribed.

On July 26, 1996, Ford filed his notice of appeal.

## III.

### STANDARD OF REVIEW

This court reviews a decision granting a Rule 12(b)(6) motion to dismiss *de novo*, upholding the decision only where it appears that relief would be denied under any provable set of facts consistent with the plaintiff's allegations. *Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d. 1115, 1116 (5th Cir. 1990), *cert. denied*, 498 U.S. 1072, 111 S. Ct. 795 (1991). Although the court must accept all of the plaintiff's factual allegations as

true, it need not construe unclear issues of law in the plaintiff's favor. *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

A decision granting summary judgment is reviewed *de novo*, applying the same standards as the district court. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party must show the absence of any genuine material fact issue, but once it has met this burden, the non-movant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The evidence is viewed in the light most favorable to the nonmoving party, *Duffy*, 44 F.3d at 312. Nevertheless, conclusional "allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy*, 44 F.3d at 312.

## IV.

## ANALYSIS

When Congress has not specified a statute of limitations for a congressionally created substantive claim, courts apply the analogous state statute of limitations. *Board of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S. Ct. 1790, 1797 (1980). A

**7**

federal civil rights action in Louisiana is governed by the one year prescription period applicable to Louisiana personal injury actions. *See Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989); LA. CIV. CODE ANN. art. 3492 (West 1997).

Ford does not allege that the Defendants took any affirmative action after the last meeting between Ford and Scallen several days before the shooting. Ford was shot on March 12, 1993, and filed suit on March 14, 1994, the last day to fall within the one year prescription period that followed this injury.[3] Because Ford only alleges conduct by the Defendants occurring before March 12, 1993, all of Ford's possible claims against the Defendants have prescribed unless the shooting on March 12th can be attributed to them.

Ford concedes that the only remaining cause of action before Judge Porteous after Ford's case had been transferred from Judge Beer's court, a procedural due process action for the allegedly improper set of alternatives initially presented to Ford after crack cocaine was found in his car, had prescribed. Ford argues, however, that Judge Beer erred in dismissing Ford's other claims, and he asserts that his allegations in support of these claims established a "continuing tort" that extended to the only

---

[3] The prescription period commenced on March 13, 1993, the day following the day of the shooting. March 13, 1994 fell on a Sunday; therefore, the last day to fall within the prescription period was Monday, March 14th.

act not barred by prescription--the March 12th shooting of Ford. Thus, Ford contends that, but for Judge Beer's erroneous decision dismissing the bulk of Ford's claims, Judge Porteous on transfer would have been presented with a substantive due process "continuing tort" claim that had not prescribed. *See La. Civ. Code art. 3492; Branch v. Willis-Knighton Medical Center*, 636 So.2d 211, 217 (1994)(determining that prescription does not run until the plaintiff has "discovered the damage, the delict and their relationship").

Rather than address Ford's continuing tort analysis, this court simply notes that Ford has failed to state a viable claim arising from the damages he sustained on March 12, 1993. The problem with Ford's theory of constitutional and other claims is the question of causal connection. At a hearing with the parties on the Defendants' 12(b)(6) motion, Judge Beer specifically addressed what conduct could be attributed to the defendants, noting: "The extent of the plaintiff's right to any damages exist (sic) only with respect to the confrontational aspect of that choice. That is, did that rise to the level of a constitutional tort, to say to him either you do this or we will arrest you. And the events that flowed thereafter as far as I am concerned, are no longer viable issues in this litigation." The court went on to

observe: "To a certain extent it's kind of the old issue of the *Palsgraf* case that discusses foreseeability, et cetera."

Judge Beer was correct in finding a foreseeability/causation problem with Ford's allegations. Ford complains of a traffic stop, the initial choice he was presented to serve as an undercover agent for the police or face prosecution, and some conversations with one or more deputies by phone and in person that followed. Ford does not allege, however, that he was in the care, custody, or control of the defendants on the night he was shot, nor does he allege that the Defendants were aware of Ford's plan to purchase drugs on his own or present at the time and place of Ford's injury. Thus, Ford's allegations fail to show that the Defendants knew of or could foresee Ford's independent decision, never discussed with the Defendants, to purchase drugs on a certain night at an apartment complex without police surveillance. Even assuming that Scallen negligently revealed Ford's potential status as an undercover agent to the underworld and that this constituted an actionable state-created danger,[4] the

---

[4] Ford was not in state custody when the harm occurred. Ford relies, however, on this court's discussion of potential government liability for harm caused by a private actor when the victim is not in state custody in Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992). *Salas* observed that "[i]f the state actor has a requisite mental state, a due process deprivation could occur under two sets of circumstances. First, a procedural or substantive due process violation could occur if a state official causes injury by arbitrarily abusing governmental power. Second, a substantive due process violation could occur if uncommon circumstances create a duty for the state to protect a particular person." Id. at 307. Salas indicated the "requisite mental state" might be satisfied by a showing of reckless or grossly negligent conduct on the part of the state actor. Id. Ford's complaint essentially alleges that

causal connection between the Defendant's actions and Ford's injury is under these facts so highly attenuated that Ford has failed to show causation as a matter of law.

Because of Ford's inability to assert causation, we do not need to go beyond the parameters of this discussion and address the Defendants' qualified immunity argument.

**V.**

**CONCLUSION**

For the reasons discussed above, the decisions of the district courts granting partial dismissal of Ford's claims, and granting summary judgment in favor of Defendants, are **AFFIRMED.**

---

the Sheriff's Office acted with recklessness or gross negligence by placing him in danger and failing to protect him. In any case, this court has not yet sustained a cause of action based on the state-created danger theory, and Ford's inability to assert causation obviates the need for any further discussion.